CALABRIA, Judge.
 

 *590
 
 Carol D. Moore ("plaintiff") appeals from the trial court's order granting defendants' motion for summary judgment on plaintiff's claim
 
 *591
 
 for legal malpractice. After careful review, we conclude that plaintiff failed to forecast any evidence to prove that, but for defendants' alleged negligence, plaintiff would have received a more favorable judgment in her prior equitable distribution action. Accordingly, we affirm the trial court's order.
 

 I. Background
 

 Plaintiff and James B. Moore, III ("Dr. Moore") were married on 22 September 1984 and separated on 29 March 2009. On 23 July 2009, plaintiff filed
 
 Moore v. Moore
 
 , 09 CVD 1183, in Orange County District Court seeking,
 
 inter alia
 
 , spousal support and an equitable distribution of marital property. On 21 June 2010, plaintiff retained William W. Jordan ("Jordan") and Hill Evans Jordan & Beatty, PLLC, (collectively, "defendants") to
 
 *220
 
 represent her in the pending action. Plaintiff hired defendants due to their experience tracing marital assets in complex equitable distribution proceedings. Defendants were aware that plaintiff believed that Dr. Moore had hidden assets in anticipation of the parties' divorce. In addition to defendants, plaintiff also retained certified public accountant Heather Linton and certified fraud examiner Carl Allen ("Allen") to help locate the alleged missing assets.
 

 During discovery, defendants conducted depositions; subpoenaed financial institutions; and reviewed tax returns and other documents for evidence of undisclosed earnings or accounts, including potential off-shore transactions. However, neither defendants nor plaintiff's experts ever located any undisclosed assets. Jordan ultimately concluded that the Moores' once-substantial marital estate had been depleted as a result of market factors and the parties' extravagant lifestyle choices. Although Allen had "theories" that Dr. Moore might have mismanaged marital funds, Jordan determined that the evidence was speculative, unsubstantiated, and likely inadmissible. Therefore, when the trial commenced on 3 January 2011, Jordan notified Allen that he would not call him to testify. At trial, defendants did not present any expert witness evidence to support plaintiff's theory that Dr. Moore hid marital assets prior to the parties' divorce.
 

 On 20 June 2012, the trial court entered an Equitable Distribution Judgment and Alimony Order awarding plaintiff alimony and an unequal distribution of the parties' net, non-retirement marital and divisible estate. The trial court found, in relevant part, that:
 

 26. Plaintiff believed that [Dr. Moore] was moving and hiding the parties' money. The Court finds Plaintiff's belief to be unfounded.
 

 *592
 
 ...
 

 40. The parties lived well above their means during their marriage. The parties frequently incurred charges on their credit cards of $12,000-$15,000 per month. They hired private tennis coaches for the children. Their children attended private and/or out-of-state schools. The parties used savings and investment accounts during the latter part of their marriage to meet their lifestyle expenses; in so doing and with the help of negative market forces, the parties dwindled their non-retirement cash and investment accounts from approximately $3,000,000 to under $200,000 by the time the parties separated.
 

 ...
 

 83. Plaintiff's claim for attorney's fees should be denied. ... The parties' respective estates, after the entry of this Judgment, shall be substantially similar. Many fees were incurred by the parties due to Plaintiff's unfounded suspicion that [Dr. Moore] was hiding money, and the Court cannot find any statutory basis and justification to support an award of attorney's fees from [Dr. Moore] to Plaintiff.
 

 Plaintiff did not appeal the Equitable Distribution Judgment and Alimony Order. However, on 18 June 2015, plaintiff filed a complaint against defendants in Orange County Superior Court, alleging legal malpractice in their representation of plaintiff's equitable distribution action. Following some discovery, on 14 October 2016, defendants filed a motion for summary judgment. On 7 February 2017, the trial court entered an order granting defendants' motion for summary judgment. Plaintiff appeals.
 

 II. Analysis
 

 On appeal, plaintiff argues that defendants' failure to present certain evidence to the district court proximately caused her to receive a less-favorable judgment at equitable distribution. We disagree.
 

 As an initial matter, since this is a legal malpractice action, "the plaintiff has the burden of proving by the greater weight of the evidence: (1) that the attorney breached the duties owed to his client, ... and that this negligence (2) proximately caused (3) damage to the plaintiff."
 
 Rorrer v. Cooke
 
 ,
 
 313 N.C. 338
 
 , 355,
 
 329 S.E.2d 355
 
 , 366 (1985) (internal citation omitted). "In a negligence action, summary judgment for defendant is proper where the evidence fails to establish negligence on the
 
 *593
 
 part of defendant, establishes contributory negligence on the part of plaintiff, or establishes that the alleged negligent conduct was not the proximate cause of
 
 *221
 
 the injury."
 

 Id.
 

 (citation and quotation marks omitted). We review the trial court's summary judgment order
 
 de novo
 
 .
 
 In re Will of Jones
 
 ,
 
 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008).
 

 A legal malpractice action is considered "a case within a case."
 
 Young v. Gum
 
 ,
 
 185 N.C. App. 642
 
 , 647,
 
 649 S.E.2d 469
 
 , 473 (2007),
 
 disc. review denied
 
 ,
 
 362 N.C. 374
 
 ,
 
 662 S.E.2d 552
 
 (2008). In order to hold an attorney liable for harm arising from the attorney's negligence in another action, the plaintiff must establish causation by proving that "(1) the original claim was valid; (2) the claim would have resulted in a judgment in the plaintiff's favor; and (3) the judgment would have been collectible."
 

 Id.
 

 at 646
 
 ,
 
 649 S.E.2d at 473
 
 (citation and quotation marks omitted). We look to the substantive law defining the plaintiff's underlying claim in order to determine which facts the plaintiff must forecast to support the legal malpractice claim.
 
 Id.
 
 at 647,
 
 649 S.E.2d at 473-74
 
 .
 

 In an equitable distribution action,
 

 the burden of proof is upon the party claiming that property is marital property to show by a preponderance of the evidence that the property: (1) was acquired by either spouse or both spouses; (2) during the marriage; (3) before the date of the separation of the parties; and (4) is presently owned.
 

 Id.
 
 at 647,
 
 649 S.E.2d at 474
 
 (citation and quotation marks omitted). "The party claiming that property is marital property must also provide evidence by which that property is to be valued by the trial court."
 
 Id.
 
 at 647-48,
 
 649 S.E.2d at 474
 
 . Accordingly, in order to succeed on her legal malpractice claim against defendants, "plaintiff was required to forecast evidence that would be sufficient to demonstrate not only that defendants were negligent in advising her, but also evidence which would support plaintiff's underlying equitable distribution claim and her allegation that an equitable distribution judgment in her favor would have exceeded" the amount she actually received.
 
 Id.
 
 at 648-49,
 
 649 S.E.2d at 474
 
 .
 

 On appeal, plaintiff asserts that there are several assets that
 
 would have been
 
 classified as marital property, but for defendants' failure to present expert financial evidence at equitable distribution. For example, plaintiff contends that a projected income spreadsheet prepared by the Moores' financial planner, Kyle Elliott, along with Elliott's deposition testimony, establishes that on 1 December 2008, "the Moores owned a 20% interest in a Texas business valued at 1.8 million dollars."
 

 *594
 
 Assuming,
 
 arguendo
 
 , that this bare assertion and evidence would suffice at equitable distribution, plaintiff's belief that the Moores' business interest would be classified as marital property might be correct, because the spreadsheet was drafted 118 days prior to the parties' separation.
 
 See generally
 

 N.C. Gen. Stat. § 50-20
 
 (2017) ("Distribution by court of marital and divisible property."). However,
 
 N.C. Gen. Stat. § 50-21
 
 (b) provides, in pertinent part:
 

 For purposes of equitable distribution,
 
 marital property shall be valued as of the date of the separation of the parties
 
 , and evidence of preseparation and postseparation occurrences or values is competent as corroborative evidence of the value of marital property as of the date of the separation of the parties.
 

 N.C. Gen. Stat. § 50-21
 
 (b) (emphasis added). Accordingly, at best, Elliott's spreadsheet and testimony would have been competent as corroborative evidence of the value of the Moores' business interest.
 

 In any event, this alleged asset was never presented to the district court because there was
 
 not
 
 sufficient supporting evidence for equitable distribution purposes. Jordan questioned Elliott about the spreadsheet and business interest during his deposition prior to equitable distribution:
 

 [JORDAN:] All right. Now over to the right I see that you've got some accounts listed and you have Carol IRA, Carol taxable, Jim IRA, Jim taxable, 20 percent of business and rental house equity.
 

 [ELLIOTT:] Yes, sir.
 

 Q. Okay. Can you explain what those accounts are and numbers represent?
 

 A. The IRA and taxable are the accounts that are managed by my firm. Twenty
 
 *222
 
 percent of business references what I was-I guess what I was told was his interest in his new business. And that is the estimate of the value of that stock.
 

 Q. And is that based on what he told you?
 

 A. Yes, sir.
 

 Q. And what was that new business?
 

 A. I've gone blank on the name. It's where he's currently employed.
 

 *595
 
 ...
 

 Q.... [E]arlier you were talking about a business that [Dr. Moore] had 20 percent interest in.
 

 A. Okay; right.
 

 Q. And you couldn't remember the name of it. And I'm-I want to know if it was Highline FI. Or was it Mentis Analytics or some other business?
 

 A. I believe Highline was his old company.
 

 Q. Uh-huh.
 

 A. And ... The 20 percent was in the new business that I believe is located in Texas.
 

 Q. Okay. But you don't remember the name of it?
 

 A. I've gone totally blank; and that doesn't sound familiar.
 

 Elliott's spreadsheet includes the specific disclosure that "Wilbanks, Smith and Thomas Asset Management LLC
 
 does not guarantee the accuracy of the data
 
 or future performance returns." (emphasis added). And although plaintiff argues that this "asset should have been disclosed, valued, and distributed as marital property" during the equitable distribution trial, she presents no evidence of its existence beyond Elliott's spreadsheet and testimony. Indeed, plaintiff fails to provide even
 
 the name
 
 of any business in which she and Dr. Moore claimed a 20% ownership interest. In short, "plaintiff has not forecast any evidence which would permit the court to identify, value or classify" any alleged asset not considered by the equitable distribution court, "and in the absence of this evidence, the court could not value or classify the property."
 
 Young
 
 ,
 
 185 N.C. App. at 649
 
 ,
 
 649 S.E.2d at 474
 
 .
 

 Plaintiff also contends that defendants breached the community's standard of care by failing to present expert financial testimony to support her theory that Dr. Moore hid marital assets. Plaintiff supports this contention by relying upon the report and deposition testimony of Buddy Herring, her own expert witness in the instant case.
 

 An attorney must "represent his client with such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. The standard is that of members of the profession in the same or similar locality under similar circumstances."
 
 Rorrer
 
 ,
 
 313 N.C. at 356
 
 ,
 
 329 S.E.2d at 366
 
 . However, "[t]he mere fact that one attorney-witness testifies that
 
 *596
 
 he would have acted contrarily to or differently from the action taken by defendant is not sufficient to establish a prima facie case of defendant's negligence. ... Differences in opinion are consistent with the exercise of due care."
 

 Id.
 

 at 357
 
 ,
 
 329 S.E.2d at 367
 
 .
 

 During his deposition in the instant case, Jordan explained why he decided not to present plaintiff's expert evidence to the equitable distribution court:
 

 [Allen] had lots of questions. He had theories. But there were no-there was nothing that could be substantiated to his various theories about the money. And, therefore, I deemed it speculative.
 

 It was unsupported. ... I did express concern about the quality of the work of Carl Allen on multiple occasions. And I don't believe that Heather Linton did work that would be usable.
 

 ... I discussed with Ms. Moore on many occasions leading up to the trial the-the concern that I had with regard to what evidence we had of the so-called missing money.
 

 It was non-existent. And as a lawyer, you have an obligation to not offer evidence that you know is not going to be allowed in and doesn't-doesn't represent probative evidence.
 

 ...
 

 I've also found that in my 40-some years of trial practice that you weaken a case when you're trying a case to the bench by offering evidence that's basically fluff or
 
 *223
 
 speculative and subject to multiple attacks by the opposition.
 

 So if you don't have something that is really probative, you're better off leaving it alone, instead of setting up a dummy for the other side to knock down and make you look bad with.
 

 "The law is not an exact science but is, rather, a profession which involves the exercise of individual judgment."
 

 Id.
 

 Contrary to plaintiff's arguments, Jordan's failure to present evidence that he, in his professional judgment, deemed "speculative" and "unsupported" is consistent
 
 *597
 
 both with the exercise of due care in representing plaintiff's action, and with his duty of candor to the court.
 

 III. Conclusion
 

 Plaintiff failed to forecast sufficient evidence for the trial court to consider regarding any alleged marital asset. Without such evidence, the trial court could not determine whether plaintiff might have obtained a judgment in excess of the one that she actually received at equitable distribution. Furthermore, contrary to plaintiff's arguments, there is no evidence that defendants failed to exercise due care and diligence in representing plaintiff's action. Since plaintiff failed to establish that any alleged negligence on the part of defendants proximately caused damage to her, we affirm the trial court's order granting defendants' motion for summary judgment.
 

 AFFIRMED.
 

 Judges DAVIS and TYSON concur.