PROGRESSIVE SALES, INC. AND LEASING ASSOCIATES, INC. (DEBTORS-IN-POSSESSION UNDER THE JURISDICTION OF THE UNITED STATES DISTRICT COURT—BANKRUPTCY DIVISION—MIDDLE DISTRICT OF NORTH CAROLINA) v. WILLIAMS, WILLEFORD, BOGER, GRADY & DAVIS, A NORTH CAROLINA LAW PARTNERSHIP CONSISTING OF JOHN HUGH WILLIAMS, JOHN R. BOGER, JR., SAMUEL F. DAVIS, JR., BRICE J. WILLEFORD, JR., THOMAS M. GRADY & M. SLATE TUTTLE, JR., AND WILLIAMS, BOGER, GRADY, DAVIS & TUTTLE, P.A. (A NORTH CAROLINA PROFESSIONAL CORPORATION), AND DAN ALAN BOONE

No. 8619SC1008

(Filed 2 June 1987)

**Attorneys at Law § 5.1— malpractice—no evidence of applicable standard of care for attorneys in same or similar community**

The trial court in an action for legal malpractice properly found that plaintiffs failed to put on any evidence of the applicable standard of care for attorneys in the same or similar community, and the court therefore did not err in allowing defendants' motion for involuntary dismissal with prejudice.

APPEAL by plaintiffs from *Davis, James C., Judge.* Order entered 28 April 1986 in Superior Court, CABARRUS County. Heard in the Court of Appeals 10 March 1987.

This is a legal malpractice action wherein plaintiffs alleged acts of negligence by defendant attorney, imputed to defendant law firm to wit; defendant attorney improperly filed Uniform Commercial Code (U.C.C.) financing statements evidencing plaintiffs' security interest in certain equipment. The trial court, after hearing plaintiffs' evidence, granted defendants' motion for involuntary dismissal under Rule 41(b), N.C. Rules Civ. P. Plaintiffs appeal from this Order.

Progressive Sales, Inc. (Progressive), sold and distributed printing equipment and related goods. Defendant law firm was retained by Progressive in 1981 and 1982 to represent the company upon request in commercial transactions. Defendant Dan Alan Boone, admitted to the North Carolina Bar in 1980, was employed as an associate in defendant law firm from 1980 until August 1982.

On 3 July 1981, Jim Pate, Progressive's president and sole shareholder, delivered to Boone at the law firm's Kannapolis, North Carolina office one original U.C.C. financing statement. This financing statement, prepared by Pate, listed Progressive as the secured party and Bason Associates, Inc. (Bason Associates), of Graham, North Carolina, as debtor. Tom Bason signed for debtor, Bason Associates, as president. The financing statement covered several pieces of printing equipment as collateral. Progressive sold the equipment to Bason Associates on 26 June 1981 pursuant to a financing agreement. Pate requested that Boone file the financing statement in order to perfect Progressive's purchase money security interest in the equipment. Boone told Pate that a second U.C.C. financing statement had to be filed with the Register of Deeds in Alamance County where, according to Pate, Bason Associates had its only place of business. When asked by plaintiffs' counsel at trial why he did not file a carbon copy or photocopy of the original financing statement with the Alamance County Register of Deeds, Boone said that Pate assured him that Bason would sign another original. Pate did not deliver to Boone a security agreement evidencing the conditional sale upon which the financing statement was based. Despite repeated requests

from Boone and the law firm, Pate never delivered such security agreement.

On the same day he received it, 3 July 1981, Boone mailed the financing statement to the North Carolina Secretary of State for filing. The financing statement was filed there on 7 July 1981. Boone wrote to Bason on 6 July 1981 enclosing a second financing statement covering the same equipment as the first financing statement, and requesting Bason to sign and return the second statement. Bason never responded to Boone's letter. Boone contacted Pate several times regarding the need for Bason to sign the second financing statement. A second financing statement was eventually filed on 4 November 1981 with the Alamance County Register of Deeds.

On 26 September 1981, plaintiff Leasing Associates, Inc. (Leasing), was formed with Pate as president and sole shareholder. Boone prepared the articles of incorporation and conducted the initial directors meeting. Neither Boone nor defendant law firm performed any other legal services for Leasing until January of 1982.

In early November of 1981, Leasing, with a loan from Piedmont Bank and Trust Company, paid Progressive in full the amount owed to it by Bason Associates for the equipment Progressive sold to Bason Associates on 26 July 1981, the same equipment covered by the financing statements. Defendants did not represent either Progressive or Leasing in this transaction. On 16 November 1981, Leasing leased this same equipment back to Bason Associates. Defendants did not represent Leasing in this transaction either. The record does not reflect that defendants were aware of the transactions between Leasing and Progressive or between Leasing and Bason Associates.

Prior to the lease of 16 November 1981, and unknown to any of the parties, Bason Associates borrowed a sum of money from the Bank of Alamance and pledged as security for the loan all the equipment it had purchased from Progressive, the same equipment covered by the financing statements filed by Boone on behalf of Progressive. The Bank of Alamance, prior to the filing of Progressive's second financing statement with the Alamance County Register of Deeds, duly filed financing statements cover-

ing the equipment with both the Secretary of State and the Alamance County Register of Deeds.

In December of 1981, Bason Associates defaulted on its payments to Leasing under the lease. From January until August of 1982, Boone was engaged periodically by Leasing to attempt collection from Bason Associates, including the institution of actions against Bason Associates to collect on the lease. In August of 1982, Boone left defendant law firm's employment and took a position with another employer.

On 12 July 1982, Bank of Alamance filed an action against, *inter alia*, Bason Associates, Progressive and Leasing for damages and to establish the priority of its lien. On 28 September 1982, the Alamance County Superior Court entered an Order adjudging Bank of Alamance as the first priority lien holder of all of Bason Associate's property, including the equipment leased from Leasing. In 1983, plaintiffs Progressive and Leasing filed voluntary bankruptcy proceedings, and are now being liquidated pursuant to Chapter 7 of the United States Bankruptcy Code.

Plaintiffs instituted this action on 4 September 1984 seeking damages from defendants in excess of $10,000.00 due to Boone's failure to timely file a second financing statement with the Alamance County Register of Deeds. The parties waived a jury trial, and the trial court heard evidence from plaintiffs. Plaintiffs put on defendant Dan Boone, Jim Pate and Norma Pate, the wife of Jim Pate, as witnesses. The trial court granted defendants' motion for involuntary dismissal at the close of plaintiffs' evidence. From this judgment, plaintiffs appeal.

*Mullins & Van Hoy, by Michael P. Mullins, for plaintiff appellants.*

*Hartsell, Hartsell & Mills, P.A., by W. Erwin Spainhour, for defendant appellees.*

JOHNSON, Judge.

Plaintiffs' record on appeal presents twenty-nine Assignments of Error essentially alleging that most of the findings of fact below are contrary to the evidence presented. Plaintiffs' brief contains arguments based on two of those Assignments of Error. Our review is limited to those two Assignments of Error. The re-

maining twenty-seven Assignments of Error not raised in the brief are deemed abandoned on appeal. Rule 28(b)(5), N.C. Rules App. P.

In general, plaintiffs argue that the trial court erred by allowing defendants' motion for involuntary dismissal after plaintiffs' evidence and dismissing the action with prejudice. Specifically, they argue that the trial court erred by finding that plaintiffs failed to put on any evidence of the applicable standard of care for attorneys in the same or similar community, and that the evidence was insufficient to show that defendant Boone lacked the requisite skill necessary to practice that other attorneys similarly situated possess. After reviewing the evidence from the trial below, we agree with the trial court's finding that plaintiffs failed to put on proper evidence of an applicable standard of care for attorneys similarly situated, and properly granted an involuntary dismissal to defendants with prejudice.

"When a motion to dismiss pursuant to 41(b) is made, the judge becomes both the judge and the jury and he must consider and weigh all competent evidence before him." *Dealers Specialties, Inc. v. Neighborhood Housing Services, Inc.*, 305 N.C. 633, 640, 291 S.E. 2d 137, 141 (1982). The trial judge in a non-jury case does not weigh the evidence in the light most favorable to the plaintiff as he does on a motion for directed verdict in a jury trial. *Id.* at 638, 291 S.E. 2d at 13. Dismissal with prejudice pursuant to a Rule 41(b) motion is a judgment on the merits, subject to the usual rules of *res judicata. Barnes v. McGee*, 21 N.C. App. 287, 289, 204 S.E. 2d 203, 205 (1974).

A plaintiff in a legal malpractice action must prove by a preponderance of the evidence that the attorney breached the duties owed to his client as set forth in *Hodges v. Carter*, 239 N.C. 517, 519, 80 S.E. 2d 144, 145-46 (1954), was thereby negligent, and that this negligence proximately caused damage to the plaintiff. *Rorrer v. Cooke*, 313 N.C. 338, 355, 329 S.E. 2d 355, 365-66 (1985). The duties from *Hodges, supra*, at 519, 80 S.E. 2d at 145-46, are as follows:

> Ordinarily when an attorney engages in the practice of the law and contracts to prosecute an action in behalf of his client, he impliedly represents that (1) he possesses the requisite degree of learning, skill, and ability necessary to the practice of his profession and which others similarly situated ordinarily possess; (2) he will exert his best judgment in the

prosecution of the litigation entrusted to him; and (3) he will exercise reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to his client's cause. (Citations omitted.)

Plaintiffs did not offer at trial the testimony or affidavits of attorneys practicing commercial law in defendants' legal community. Rather, defendants' counsel at one point during trial said that attorneys in Cabarrus County do not usually file security agreements as financing statements as allowed under G.S. 9-402. In their brief before this Court plaintiffs argue that expert testimony is not required in a legal malpractice action. Plaintiffs cite language from *Rorrer, supra,* at 356, 329 S.E. 2d at 366, which says that "[e]xpert testimony is helpful [in legal malpractice actions] to establish what the standard of care as applied in the investigation and preparation of medical malpractice lawsuits requires and to establish whether the defendant-attorney's performance lived up to such a standard." Plaintiffs' citation from *Rorrer* is incomplete. While this language does not mandate that expert testimony be introduced in a medical malpractice action, the Court in *Rorrer, supra,* also stated that:

> The third prong of *Hodges* requires an attorney to represent his client with such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. *The standard is that of members of the profession in the same or similar locality under similar circumstances.*

(Emphasis supplied.) Although *Rorrer* does not mandate introducing expert testimony in a legal malpractice action, that case does stress the need to establish the standard of care in the same or similar legal community. Plaintiffs in the case *sub judice* argue that there was sufficient evidence that Boone lacked the requisite degree of learning, skill, and ability that other attorneys similarly situated possess. The evidence at trial is clear as to what Boone did and did not do. What is not clear is the standard by which Boone's acts and omissions are to be weighed. That is the purpose of putting on evidence as to the standard of care in a malpractice lawsuit; to see if this defendant's actions "lived up" to that standard. *Rorrer, supra.* In *Rorrer,* upon which plaintiffs rely, the Court held that the affidavit of an attorney offered by the plaintiff to show the applicable standard of care failed to state affirmatively what the standard of care required the defendant attorney

to do, but was merely an opinion as to the importance of having more than one medical witness in a medical malpractice action. In the case *sub judice*, there is not so much as an affidavit from another attorney. Without any evidence as to the standard of care, plaintiffs failed to get past the first prong of the *Rorrer* test. Accordingly, this Court need not address plaintiffs' other contentions. The judgment appealed from granting defendants' motion for involuntary dismissal with prejudice is

Affirmed.

Judges EAGLES and ORR concur.