MICHAEL T. HAAS AND WYNN MARTIN HAAS v. JAMES S. WARREN, AND WARREN AND PERRY, ATTORNEYS AT LAW

No. 9210SC992

(Filed 16 November 1993)

**Attorneys at Law § 45 (NCI4th) — malpractice — standard of care in community — insufficiency of evidence**

Testimony by defendant attorney and his associate in a legal malpractice action that they did not publish a legal notice in the same newspaper used by other attorneys in their community was insufficient evidence of the standard of care for attorneys in that community, and the trial court therefore properly entered a directed verdict for defendants.

**Am Jur 2d, Attorneys at Law § 223.**

**Admissibility and necessity of expert evidence as to standards of practice and negligence in malpractice action against attorney. 14 ALR4th 170.**

On writ of certiorari from order entered 30 September 1991 by Judge Knox V. Jenkins in Wake County Superior Court. Heard in the Court of Appeals 15 September 1993.

*Everett Gaskins Hancock & Stevens, by E.D. Gaskins, Jr., Hugh Stevens, and Katherine R. White, for plaintiffs-appellants.*

*Bailey and Dixon, by Patricia P. Kerner, for defendants-appellees.*

WYNN, Judge.

The question presented in this case is whether testimony by the defendant attorney and his associate in a legal malpractice action that they did not publish a legal notice in the same newspaper used by other attorneys in their community is sufficient evidence of the standard of care for attorneys in that community. The trial court entered a directed verdict for defendants. We affirm.

On 2 September 1986, plaintiffs sold a tract of land located in Franklin County to Ronnie and Daria LaShannon. The LaShannons signed a promissory note and executed a deed of trust granting the property to their attorney, defendant James S. Warren, as trustee for plaintiffs. In 1988, plaintiffs asked defendant to begin

## HAAS v. WARREN

[112 N.C. App. 574 (1993)]

foreclosure proceedings against the LaShannons for failure to pay the note. John Cook, an associate in defendant's law firm, placed the required legal advertisement for the foreclosure sale in *The Wake Weekly*. Cook said that previously, the firm had always published legal notices concerning Franklin County matters in *The Franklin Times*.

Cook testified that when he placed the advertisement he and defendant were unaware of any other attorneys who had published foreclosure notices which concerned property in Franklin County in *The Wake Weekly*. They chose *The Wake Weekly* in order to avoid the high advertising costs of *The Franklin Times*. Cook said he performed some research on whether the advertisement would be proper if published in *The Wake Weekly*. He admitted that he did not find and was not aware of N.C. Gen. Stat. § 1-597 which states that a legal notice which is required to be advertised in a newspaper shall have no effect unless it is published in a newspaper which has "been admitted to the United States mails as second class matter in the county or political subdivision where such . . . notice is required to be published." N.C. Gen. Stat. § 1-597 (1983). The trial court took judicial notice of the fact *The Wake Weekly* did not comply with N.C. Gen. Stat. § 1-597.

The foreclosure sale was held on 19 September 1988 and plaintiffs purchased the property for $66,733.11. After the sale, the LaShannons filed a lawsuit against plaintiffs and defendant contending that publishing the notice of the sale in *The Wake Weekly* was improper. Plaintiffs and defendant signed a consent order to set aside the foreclosure sale. On 28 April 1989, after publishing the legal notice in *The Franklin Times*, a second foreclosure sale was held and plaintiffs purchased the property for $70,844.96. Defendant then requested $3,814.99 of this amount as his trustee's commission.

Plaintiffs brought this action against defendant and his law firm for legal malpractice. At the close of plaintiffs' evidence, the trial court granted defendants' motion for a directed verdict. From this order, plaintiffs appeal.

---

Plaintiffs contend the trial court erred in granting defendants' motion for a directed verdict. They argue that they established the applicable standard of care in the legal community through their examination of Cook and Warren. Plaintiffs contend that the

testimony of Cook and Warren that they were unaware of any other lawyer in their community who advertised in *The Wake Weekly* was sufficient to survive defendants' motion for a directed verdict. We disagree.

In reviewing the granting of a directed verdict for the defendant in a negligence action, this Court must consider the evidence in the light most favorable to the plaintiff and can only affirm the verdict if, as a matter of law, a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish. *Shreve v. Duke Power Co.*, 97 N.C. App. 648, 389 S.E.2d 444, *disc. rev. denied*, 326 N.C. 598, 393 S.E.2d 883 (1990). All of the evidence which supports the plaintiff's claim must be taken as true and "considered in the light most favorable to him, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom, and with contradictions, conflicts and inconsistencies being resolved in his favor." *City of Charlotte v. Skidmore, Owings and Merrill*, 103 N.C. App. 667, 678, 407 S.E.2d 571, 578 (1991); *Smith v. VonCannon*, 283 N.C. 656, 197 S.E.2d 524 (1973); *May v. Mitchell*, 9 N.C. App. 298, 176 S.E.2d 3 (1970).

In order to show negligence in a legal malpractice action, the plaintiff must first prove by the greater weight of the evidence that the attorney breached the duties owed to his client as established by *Hodges v. Carter*, 239 N.C. 517, 80 S.E.2d 144 (1954) and then show that this negligence proximately caused damage to the plaintiff. *Summer v. Allran*, 100 N.C. App. 182, 394 S.E.2d 689 (1990), *disc. rev. denied*, 328 N.C. 97, 402 S.E.2d 428 (1991). The duties promulgated by *Hodges* are:

> Ordinarily when an attorney engages in the practice of the law and contracts to prosecute an action in behalf of his client, he impliedly represents that (1) he possesses the requisite degree of learning, skill, and ability necessary to the practice of his profession and which others similarly situated ordinarily possess; (2) he will exert his best judgment in the prosecution of the litigation entrusted to him; and (3) he will exercise reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to his client's cause.

*Hodges*, 239 N.C. at 519, 80 S.E.2d at 145-146.

HAAS v. WARREN

[112 N.C. App. 574 (1993)]

In *Rorrer v. Cooke,* our Supreme Court expounded on the standard of care concept.

> The third prong of *Hodges* requires an attorney to represent his client with such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. The standard is that of members of the profession in the same or similar locality under similar circumstances.

*Rorrer v. Cooke,* 313 N.C. 338, 356, 329 S.E.2d 355, 366 (1985).

In *Progressive Sales, Inc. v. Williams, Willeford, Boger, Grady & Davis,* 86 N.C. App. 51, 356 S.E.2d 372 (1987), the plaintiffs charged their attorney with negligence for improperly filing Uniform Commercial Code financing statements as required by statute. At trial, the plaintiffs did not offer any testimony of other attorneys practicing commercial law in the defendant's legal community. In affirming a motion for involuntary dismissal against the plaintiffs, this Court stated:

> The evidence at trial is clear as to what [the attorney] did and did not do. What is not clear is the standard by which [the attorney's] acts and omissions are to be weighed. That is the purpose of putting on evidence as to the standard of care in a malpractice lawsuit; to see if this defendant's actions "lived up" to that standard.

*Id.* at 56, 356 S.E.2d at 375-376 (1987).

In the instant case, plaintiffs argue the standard of care was established by Cook and Warren's testimony. At trial, Cook testified:

Q   So it's correct to say that you had, you had never published a notice of foreclosure sale on a Franklin County foreclosure in the Wake Weekly until you undertook to do it on Mr. Haas' foreclosure, is that correct?

A   Yes, with the proviso that it was at the first of the foreclosures, first actually of three. That's where I got confused.

Q   No other attorney in the firm had had a foreclosure in Franklin County published in the Wake Weekly prior to that time, had they, prior to the first?

A   Prior to, prior to the first appearance, that's correct.

Warren then testified to the following:

Q   Now you talked to some attorneys in the area also, didn't you?

A   I did.

Q   And you inquired of them, among other things, what their practice was with respect to the publication of notice for Franklin County foreclosure, didn't you?

A   I discussed it with other attorneys over a period of time. This is something I wanted to do for quite a few years. Again, other than Charles Davis, I can't even recall who I might have discussed it with. I certainly wasn't discussing it just for Franklin County.

Q   Now at the point in time these discussions occurred, your firm had never placed such an ad in the Wake Weekly, is that right?

A   That would be correct.

Q   You inquired of these other attorneys about their practice in that respect, didn't you?

A   Yes.

Q   And they told you that their practice was to, to publish ads for Franklin County foreclosures in the Franklin Times, didn't they?

A   Yes.

Q   And were you aware of anyone who made a practice of publishing notices of sale for Franklin County foreclosures in the Wake Weekly while not also publishing it in the Franklin Times?

A   No.

Q   So you were aware when you did this, that this is something that was not done, not generally done in the legal community where you practiced, weren't you?

A   That's correct.

This testimony, taken in the light most favorable to the plaintiffs, fails to establish the applicable standard of care in defendant's

legal community. The testimony is evidence of what other attorneys *do*, not evidence of what they *should do* which is what is required by *Hodges* and *Rorrer*. "The law is not an exact science but is, rather, a profession which involves the exercise of individual judgment. Differences in opinion are consistent with the exercise of due care." *Rorrer*, 313 N.C. at 357, 329 S.E.2d at 367. Plaintiffs' evidence does not show the standard by which defendants' actions are to be weighed. The testimony of Cook and Warren does not establish the "skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." *Id.* at 356, 329 S.E.2d at 366.

Under the third prong of *Hodges*, to establish a breach of duty by the attorney the plaintiff must produce evidence that the defendant failed "to exercise ordinary care in the use of his skill or the application of his knowledge to the plaintiff's case." Charles E. Daye and Mark W. Morris, *North Carolina Law of Torts*, § 18.32 (1991). *See Hodges*, 239 N.C. at 519, 80 S.E.2d at 145-146; *Rorrer*, 313 N.C. at 356, 329 S.E.2d at 366. In *Rorrer*, the plaintiff submitted the affidavit of an attorney which outlined several things he would have done which the defendant attorney did not do. The Court held the affidavit was insufficient proof that the defendant violated his duty of care because "the affidavit nowhere states that [the defendant's] inaction violated a standard of care required of similarly situated attorneys." *Rorrer*, 313 N.C. at 356-357, 329 S.E.2d at 367.

Similarly, in the case *sub judice*, the plaintiffs did not present any testimony that defendants' actions violated the standard of care in their legal community. Cook and Warren's testimony that all other attorneys in their community use *The Franklin Times* is not the same as what is required by *Hodges* and *Rorrer*—that the standard of care in their community *requires them* to use *The Franklin Times*.

Plaintiffs also argue that defendants' failure to find and follow N.C. Gen. Stat. § 1-597 which sets forth the criteria for publishing legal notices in newspapers is negligence as a matter of law. We disagree.

> No lawyer is bound to know all the law. It is not an exact science. There is no attainable degree of skill or excellence at which all differences of opinion or doubts upon questions of law can be removed from the minds of lawyers and judges. If the law on the subject is well and clearly defined and has

existed and been published long enough to justify the belief that it was known to the profession, a lawyer who disregards the rule or is ignorant of it renders him liable for losses caused by such negligence or want of skill.

*George v. Caton*, 93 N.M. 370, 377, 600 P.2d 822, 829 (1979). *Accord Hodges*, 239 N.C. at 520, 80 S.E.2d at 146; *Berman v. Rubin*, 138 Ga. App. 849, 227 S.E.2d 802 (1976). *See also National Sav. Bank of District of Columbia v. Ward*, 100 U.S. 195, 199, 25 L. Ed. 621, 623 (1879) ("[A]ttorneys do not profess to know all the law or to be incapable of error or mistake in applying it to the facts of every case, as even the most skillful of the profession would hardly be able to come up to that standard.") Plaintiffs failed to provide any evidence that a competent attorney would have found or be aware of N.C. Gen. Stat. § 1-597. The jury needs some evidence of what a competent attorney would have done under similar circumstances in order to determine whether the defendant's actions met that standard. *Progressive Sales*, 86 N.C. App. at 56, 356 S.E.2d at 376.

Since plaintiffs did not provide evidence by which defendants' actions are to be measured, the granting of a directed verdict by Judge Jenkins against plaintiffs was proper. Accordingly, the action of the trial court is

Affirmed.

Chief Judge ARNOLD and Judge JOHN concur.