COMMONWEALTH LAND TITLE IN-
SURANCE COMPANY, a Pennsyl-
vania Corporation, Plaintiff,

v.

WALKER AND ROMM, ATTORNEYS
AT LAW, and William H. Romm,
Jr., Defendants.

No. 93–10–Civ–2–BO.

United States District Court,
E.D. North Carolina,
Elizabeth City Division.

April 11, 1994.

George L. Fletcher, Faison & Fletcher, Wilmington, NC, for plaintiff Commonwealth Land Title Ins. Co., a Pennsylvania Corp.

Vaiden P. Kendrick, Michael Murchison, Murchison, Taylor, Kendrick, Gibson & Davenport, Wilmington, NC, for defendants Walker and Romm, Attys. at Law, William H. Romm, Jr.

## ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This matter is before the undersigned on the plaintiff's motion for summary judgment and defendants' motion to strike or disregard factual material submitted in connection with plaintiff's reply memorandum. Plaintiff Commonwealth Land Title Insurance Company (hereinafter Commonwealth), a Pennsylvania corporation, filed this cause of action against defendant William H. Romm, Jr. (hereinafter Romm), a citizen and resident of Currituck County, North Carolina, and the sole proprietor of defendant Walker and Romm, Attorneys at Law. The court has jurisdiction pursuant to 28 U.S.C. § 1332. The court grants summary judgment for the plaintiff.

## Facts

Romm is an attorney who practices law in Currituck County, North Carolina. Romm represented Fred and Judy Bender in various real estate closings. The Benders formed three corporations, Mashoes Tract One, Inc., Mashoes Tract Two, Inc., and Mashoes Tract Three, Inc. The Benders, through Romm, used these in various real estate transactions. The Benders owned six lots in a subdivision in Dare County known as the Fred Judd Bender Subdivision.

When the Benders sold a lot, it was their practice to deed the lot to one of the Mashoes corporations and then for the Mashoes corporation to deed the lot to the ultimate buyer. Typically in these transactions, Romm prepared the deed conveying title from the Benders to one of the Mashoes corporations.

In early 1990, Alan Michael Leavitt agreed to buy Lot 6 of the Fred Judd Bender Subdivision. At that time Lot 6 was encumbered by a $32,600 deed of trust to Russell E. Twiford. Leavitt arranged to borrow $64,000 from East Carolina Bank (hereinafter East Carolina) and agreed to place a first deed of trust on the property in favor of East Carolina.

Romm handled the closing for the Benders and East Carolina. He received a closing package from East Carolina which directed him to procure a title insurance policy insuring East Carolina as first lien holder for Lot 6. The plaintiff maintains that East Carolina further directed Romm to examine the title to the lot, prepare and submit documentation necessary to close the transaction, and prepare or otherwise obtain and submit to East Carolina a first lien deed of trust on the lot. The defendants contend that the instructions from East Carolina did not require Romm to furnish a title opinion directly to East Carolina.

Pursuant to East Carolina's instructions, Romm arranged to secure title insurance through Commonwealth. On May 2, 1990, Romm furnished an attorney's preliminary certificate to Commonwealth in which Romm certified that Mashoes Tract Three, Inc., was the owner of Lot 6. After receiving Romm's preliminary certificate, Commonwealth issued a title insurance commitment.

On May 11, 1990, East Carolina closed the loan to Leavitt for $64,000. Subsequently, Leavitt delivered the $64,000 to Mashoes Tract Three, Inc. Mashoes Tract Three, Inc., then sent $30,000 of the $64,000 to Twiford. Twiford canceled the promissory note and released Lot 6 from his deed of trust. After Leavitt gave the $64,000 to Mashoes Tract Three, Inc., Romm recorded a deed from Mashoes Tract Three, Inc., to Leavitt, purportedly conveying title to Lot 6. Romm then recorded a deed of trust to East Carolina's trustee for $64,000. Lot 6 was pledged as security for the $64,000 loan. Romm then furnished a Final Opinion on Title certifying that Leavitt had fee simple title to Lot 6 and that East Carolina had a first lien deed of trust on the Lot 6.

Relying on Romm's Final Opinion, Commonwealth issued a title insurance policy for $64,000 to insure East Carolina's first lien position on the Lot. Commonwealth also issued an owner's policy to Leavitt to insure that he was vested with fee simple title to Lot 6 on the policy date.

At the conclusion of the transaction, the parties believed that Leavitt had obtained the deed to Lot 6 and East Carolina had a first lien on the property. However, during the transaction, Romm negligently failed to convey Lot 6 from the Benders to Mashoes Tract Three, Inc. Because Mashoes Tract Three, Inc., never obtained title from the Benders, title never passed from Mashoes Tract Three, Inc., to Leavitt. Consequently, East Carolina never obtained a first lien on the property. Since the closing, the Benders' judgement creditors have levied approximately $400,000 worth of liens against the Benders' property. Because ownership of Lot 6 remained with the Benders after the closing, these liens attached to Lot 6 and currently encumber the property.

After discovering the error, Leavitt and East Carolina filed notice of formal claims with Commonwealth pursuant to their title insurance policy. Subsequently, Commonwealth paid Leavitt and East Carolina $54,000 to settle their claims. Leavitt and East Carolina have since executed releases. Commonwealth then filed this action against the defendants to recover $54,000, the amount

Commonwealth paid Leavitt and East Carolina under their policies.

Commonwealth bases its claim that it is entitled to recover from Romm in both tort and contract. First, Commonwealth argues that it is entitled to recover in tort for Romm's negligent acts and omissions and professional malpractice. Second, Commonwealth contends that is entitled to recover in contract as either a subrogee of East Carolina or as a third-party beneficiary of the contract between Romm and East Carolina.

Romm concedes that he acted negligently by failing to deed Lot 6 from the Benders to Mashoes Three, Inc., but he disagrees that Commonwealth is entitled to recover. First, he argues that Commonwealth cannot recover in either tort or contract because neither Commonwealth nor East Carolina had a contractual attorney-client relationship with Romm. Second, Romm argues that Commonwealth failed to mitigate damages by contacting the judgment creditors to see if they would release their liens upon payment of a reasonable sum. Third, Romm argues that Commonwealth failed to mitigate damages by pursuing recovery under the doctrine of equitable subrogation.

### Discussion

Commonwealth first contends that Romm is liable to Commonwealth for malpractice. In order to show negligence in a legal malpractice action, the plaintiff must prove that the attorney breached a duty owed to the plaintiff and that the attorney's negligence proximately caused damage to the plaintiff. *Haas v. Warren,* 112 N.C.App. 574, 576, 436 S.E.2d 259 (1993) (citing *Hodges v. Carter,* 239 N.C. 517, 80 S.E.2d 144 (1954), and *Summer v. Allran,* 100 N.C.App. 182, 394 S.E.2d 689 (1990), *disc. rev. denied,* 328 N.C. 97, 402 S.E.2d 428 (1991)). In some situations a plaintiff may recover for an attorney's negligence even if the plaintiff was not the attorney's client. *United Leasing Corporation v. Miller,* 45 N.C.App. 400, 406, 263 S.E.2d 313 (1980). Whether a non-client third-party may recover for an attorney's malpractice depends on several factors: (1) the extent to which the transaction was intended to affect the third-party; (2) the fore-

seeability of harm to the third-party; (3) the degree of certainty that the third-party suffered injury; (4) the closeness of the connection between the attorney's conduct and the injury; (5) the moral blame attached to the attorney's conduct; and (6) the policy of preventing future harm. *Id.* at 407, 263 S.E.2d 313.

■ After reviewing the facts, this court finds that Commonwealth may pursue a malpractice action against Romm. The parties agree that Romm acted negligently in several ways. First, Romm failed to convey title to Lot 6 from the Benders to Mashoes Tract Three, Inc., as was the understood practice. Second, Romm failed to indicate in both his preliminary certificate and in his final opinion that title to Lot 6 was still vested with the Benders.

The facts further indicate that Commonwealth was injured as a proximate result of Romm's negligence. Romm furnished certification to Commonwealth so that Commonwealth could issue its title insurance policies. Even if Romm did not furnish this certification directly to Commonwealth as the defendant contends, Romm still knew that Commonwealth was likely to rely on his certification when it issued its title insurance policies. Therefore, it was foreseeable that Commonwealth would rely on Romm's representation and that Commonwealth would be injured if Romm erroneously represented who held title to Lot 6. As the result of Romm's negligence, Commonwealth had an obligation to pay Leavitt and East Carolina pursuant to their title insurance policies. Because Commonwealth reasonably and foreseeably relied on Romm's representation, Romm is liable for Commonwealth's injury. Otherwise, Commonwealth is without recourse and Romm would not be held accountable for his negligence.

■ Contrary to Romm's argument, Commonwealth did not fail in its duty to mitigate damages. The law does not require Commonwealth to have incurred undue risk or expense in the process of mitigating damages. *George E. Shepard, Jr., Inc., v. Kim, Inc.*, 52 N.C.App. 700, 712, 279 S.E.2d 858 (1981). Efforts by an injured party to minimize its damages are determined by the rules of common sense, good faith, and fair dealing. *Marine Ecology Systems, Inc. v. Spooners Creek Yacht Harbor, Inc.*, 40 N.C.App. 726, 253 S.E.2d 613 (1979).

Commonwealth made a reasonable and successful attempt to mitigate its damages. Although East Carolina's insurance policy had a face value of $64,000 and Leavitt's insurance policy had a face value of $80,000, Commonwealth managed to settle both claims for $54,000. Thus, Commonwealth mitigated its damages by settling the claims for substantially less than the face value of the policies.

Commonwealth's duty to mitigate did not require it to contact the Benders' judgement creditors to inquire if they would release their liens for lesser payment. Between the time Romm failed to convey the property to Mashoes Tract III, Inc., and the time plaintiff filed suit, the Benders' judgment creditors had levied $400,000 worth of liens upon Lot 6. The chance that the Benders' judgement creditors would release their $400,000 worth of liens for less than the property's assessed value of $54,000 is of no legal significance.

■ Furthermore, Commonwealth's duty to mitigate did not require it to pursue recovery under the doctrine of equitable subrogation. Under the doctrine of equitable subrogation, if a lender advances money to a land owner for the express purpose of discharging a prior lien with the understanding or expectation that the lender will obtain a first lien position, but the lender fails to acquire a first lien position, the lender may become equitably subrogated to the rights of the prior lienholder whose debt has been paid. *Wallace v. Benner*, 200 N.C. 124, 156 S.E. 795 (1931); *Moring v. Privott*, 146 N.C. 558, 60 S.E. 509 (1908). However, a lender may take advantage of the doctrine of equitable subrogation only if (1) the lender advanced funds at the insistence of either the land owner or lien holder and (2) the lender advanced funds for the express purpose of extinguishing a prior lien on the land owner's land. *Peek v. Wachovia Bank & Trust Company*, 242 N.C. 1, 15–16, 86 S.E.2d 745 (1955).

Equitable subrogation is unavailable based on the facts of this case. The doctrine deals

with a situation where there is an innocent creditor who lends money to a borrower for the purpose of extinguishing a prior debt of the borrower affecting the borrower's land. That situation does not exist in this case. The loan proceeds were not used to extinguish a debt of the borrower, rather they were used to extinguish the debt of the seller, who was a stranger to the loan, but whose prior debt, and the lien resulting from it, had to be cleared in order for the sale to be consummated and a closing of the real estate transfer to take place. Consequently, the loan proceeds were used to pay the Twiford deed of trust which was a debt of the Benders and not to pay a debt of Leavitt, who was the borrower.

Consequently, East Carolina did not have the doctrine of equitable subrogation available to it, and Commonwealth, its subrogee, likewise could not use this equitable theory.

Because Romm's breach of duty was the proximate cause of Commonwealth's injury, and because Commonwealth did not fail in its duty to mitigate damages, this court finds that Commonwealth is entitled to $54,000 in damages from Romm.

Accordingly, Commonwealth's motion for summary judgment is GRANTED. Because the court reached its decision without regard to the factual material submitted by the plaintiff in its reply memorandum, the defendant's motion to strike is now moot.