STATE EMPLOYEES' CREDIT UNION, Plaintiff,
v.
JULIAN R. HENDRYX, LINDA M. HENDRYX, MICHAEL A. HOWARD, and CHARLENE B. RAIFORD, Defendants.
No. COA09-417
Court of Appeals of North Carolina.
Filed December 22, 2009
This case not for publication
Bailey & Dixon, L.L.P., by Cathleen M. Plaut, J. Heydt Philbeck, and Adam N. Olls, for Plaintiff.
H. Wood Vann for Defendant Charlene B. Raiford.
STEPHENS, Judge.

I. Procedural History
Plaintiff State Employees' Credit Union ("SECU") filed an amended complaint on 30 May 2007 against, inter alia, Defendant Charlene B. Raiford ("Raiford"), the closing attorney in the loan transactions at issue, alleging negligence, fraud, and unfair and deceptive trade practices. On 24 September 2007, SECU voluntarily dismissed its claim for unfair and deceptive trade practices.
On 29 February 2008, Raiford filed a motion for summary judgment. On 11 September 2008, SECU filed materials in opposition to the motion. On 15 September 2008, Raiford filed a supplemental motion for summary judgment. On 2 October 2008, Raiford's motion for summary judgment was granted. On 16 December 2008, judgment was entered against Defendant Michael A. Howard ("Howard").[1] SECU appeals the trial court's order granting Raiford's motion for summary judgment.[2]

II. Factual Background
This appeal involves the purchase and refinance of the following five properties located in Durham, North Carolina: 1102 Gearwood Avenue; 1104 Gearwood Avenue; 606 Gray Avenue; 702 Gray Avenue; and 1313 Calvin Street. The Hendryxs were the purchasers of the properties and obtained loans from SECU to refinance all the properties. Raiford was the closing attorney for the purchase and subsequent refinancing of all the properties.
On 5 August 2004, the Hendryxs purchased 1102 and 1104 Gearwood Avenue from Margaret Upchurch via seller-owner financing. On that same day, Shannon,[3] an SECU employee, contacted Raiford and requested copies of the recorded deeds. On 6 August 2004, Raiford recorded the deeds and deeds of trust for both properties and faxed a copy of the recorded deeds to Shannon. The deeds for each of the properties bear a North Carolina Revenue Stamp of $68, indicating a purchase price of $34,000 per property.[4]
On 12 August 2004, Raiford received closing packages from SECU for refinance loans on both properties. SECU had not scheduled closings for these properties with Raiford prior to sending her the closing packages. The closing packages contained closing instructions and the loan documents. The appraisals of the properties were not included in the closing packages, although the loan instructions indicated that SECU had paid for the appraisals. The loan amount for each property was $80,000.
On 12 August 2004, Raiford prepared the title commitments for the properties to reflect SECU's loan amounts and conducted the loan closings on 13 August 2004, per SECU's instructions. After the closings, Raiford forwarded the title commitments and closing documents to SECU.
On 16 August 2004, the Hendryxs purchased 606 Gray Avenue, 702 Gray Avenue, and 1313 Calvin Street from Margaret Upchurch via seller-owner financing. On that same day, Leticia Jones, an SECU employee, contacted Raiford and requested copies of the recorded deeds. On 17 August 2004, Raiford recorded the deeds and deeds of trust for the properties and faxed a copy of the recorded deeds to Ms. Jones. The deed for the 606 Gray Avenue property bears a North Carolina Revenue Stamp of $65, indicating a purchase price of $32,500. The deed for the 702 Gray Avenue property bears a North Carolina Revenue Stamp of $61, indicating a purchase price of $30,500. The deed for the 1313 Calvin Street property bears a North Carolina Revenue Stamp of $54, indicating a purchase price of $27,000.
On 26 August 2004, Raiford received closing packages from SECU for refinance loans on all three properties. As with the Gearwood Avenue properties, SECU had not scheduled closings for these properties with Raiford prior to sending her the closing packages. The closing packages contained closing instructions and the loan documents. The appraisals of the properties were not included in the closing packages, although the loan instructions indicated that SECU had paid for the appraisals. The loan amount for the 606 and 702 Gray Avenue properties was $68,600 each. The loan amount for the 1313 Calvin Street property was $60,600.
On 26 August 2004, Raiford prepared the title commitments for the properties to reflect SECU's loan amounts and conducted the loan closings on 27 August 2004, per SECU's instructions. After the closings, Raiford forwarded the title commitments and closing documents to SECU.
The Hendryxs subsequently defaulted on all five loans and the five properties were foreclosed upon and sold. SECU lost $307,379.12 as a result.

III. Discussion
SECU argues on appeal that the trial court erred in granting summary judgment in favor of Raiford on SECU's negligence and fraud claims. We disagree with SECU and affirm the trial court's order.
Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). Summary judgment "does not authorize the court to decide an issue of fact. It authorizes the court to determine whether a genuine issue of fact exists." Vassey v. Burch, 301 N.C. 68, 72, 269 S.E.2d 137, 140 (1980). Summary judgment should be denied "[i]f different material conclusions can be drawn from the evidence." Spector United Employees Credit Union v. Smith, 45 N.C. App. 432, 437, 263 S.E.2d 319, 322 (1980). On appeal, we view the evidence in the light most favorable to the nonmoving party, ABL Plumbing & Heating Corp. v. Bladen Cty. Bd. of Educ., 175 N.C. App. 164, 167-68, 623 S.E.2d 57, 59 (2005), disc. review denied, 360 N.C. 362, 629 S.E.2d 846 (2006), and determine whether summary judgment was appropriate under a de novo standard of review. Falk Integrated Techs., Inc. v. Stack, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999).

A. Negligence
In an action for legal malpractice predicated upon a theory of an attorney's negligence, the plaintiff must prove by the greater weight of the evidence: (1) that the attorney breached the duties owed to his client, as set forth by Hodges v. Carter, 239 N.C. 517, 80 S.E.2d 144 (1954), and that this breach of duty (2) proximately caused (3) damage to the plaintiff. Rorrer v. Cooke, 313 N.C. 338, 355, 329 S.E.2d 355, 365-66 (1985). Summary judgment for the defendant is proper where the evidence (1) fails to establish negligence on the part of defendant, (2) establishes contributory negligence on the part of plaintiff, or (3) establishes that the alleged negligent conduct was not the proximate cause of the injury. Williams v. Carolina Power & Light Co., 36 N.C. App. 146, 147, 243 S.E.2d 143, 144 (1978), rev'd on factual grounds, 296 N.C. 400, 250 S.E.2d 255 (1979).
The duties owed by an attorney to his or her client are described by Hodges v. Carter as follows:
Ordinarily when an attorney engages in the practice of the law and contracts to prosecute an action in behalf of his client, he impliedly represents that (1) he possesses the requisite degree of learning, skill, and ability necessary to the practice of his profession and which others similarly situated ordinarily possess; (2) he will exert his best judgment in the prosecution of the litigation entrusted to him; and (3) he will exercise reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to his client's cause.
Hodges, 239 N.C. at 519, 80 S.E.2d at 145-46. In Rorrer, the North Carolina Supreme Court elaborated on the standard of care applicable to attorneys, stating:
The third prong of Hodges requires an attorney to represent his client with such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. The standard is that of members of the profession in the same or similar locality under similar circumstances.
Rorrer, 313 N.C. at 356, 329 S.E.2d at 366. "Although Rorrer does not mandate introducing expert testimony in a legal malpractice action, that case does stress the need to establish the standard of care in the same or similar legal community." Progressive Sales, Inc. v. Williams, Willeford, Boger, Grady & Davis, 86 N.C. App. 51, 56, 356 S.E.2d 372, 375 (1987). The purpose of offering evidence as to the standard of care in a malpractice lawsuit is to see if the defendant's actions "lived up" to that standard. Id. at 56, 356 S.E.2d at 376.
In this case, SECU and Defendant both submitted affidavits from experts regarding the standard of care applicable to attorneys conducting residential real estate closings in North Carolina. SECU submitted an affidavit from Larry McBennett, a licensed North Carolina attorney with extensive experience in real estate law. McBennett stated the following:
3. . . . In the refinance closings, [Raiford] was representing both the borrower and the lender. That is permissible under RPC 210 of the Rules of Professional Conduct of the North Carolina State Bar, so long as [Raiford] determines that the interests of the borrower and the lender are aligned and that the potential conflict of interest can be managed. . . .
4. On the facts presented, with multiple transactions occurring within a very brief period, the standard of care would be to inquire as to why there was such a discrepancy between the purchase prices and the subsequent refinance loans. . . . Absent a reasonable explanation by the borrower, the closing attorney had a duty under RPC 210 to withdraw from representing either party because of the conflict of interest between the two clients. The closing attorney had a duty to notify both clients of the withdrawal because of a conflict of interest between them. In addition, the closing attorney had a duty under Rule 1.2(d) to refrain from assisting the borrower client in fraudulent conduct and an affirmative duty to withdraw from representation upon the discovery that the client's conduct was fraudulent.
McBennett further opined that Raiford deviated from the standard of care by: (1) not inquiring of the borrower as to the discrepancies in values between the original purchase prices and the refinance amounts; (2) assuming no valid reason was given by the borrower, in closing the refinance loans; and (3) failing to withdraw from representing both parties because of the conflict of interest between them.
Raiford submitted an affidavit from Barry D. Mann, also a licensed North Carolina attorney with extensive experience in real estate law. Mann stated:
7. . . . The role of the closing attorney is to coordinate, orchestrate and effectuate the closing and to represent the party paying her attorney's fees (usually the buyer/borrower), subject only to compliance with any instructions from the lender that the attorney's client has chosen for financing. . . .
8. However, even assuming that Raiford was also representing [SECU] while performing her duties as closing attorney, the scope of that representation would have been limited to compliance with the aforementioned loan instructions from [SECU]. . . .
. . . .
12. . . . I believe it would have been entirely inappropriate for Raiford to have offered her opinion [regarding the appropriateness of the loan amount] to [SECU] in these cases.
Mann was of the opinion that Raiford did not deviate from any standard of care imposed on her.
In her brief to this Court, Raiford contends that her expert "sets forth with clarity the duty of a closing attorney as it presently exists in this State." Raiford further argues that SECU "cannot present a single case, statute, or treatise that supports" the standard of care enunciated by McBennett. However, we note that Raiford has not presented a single case, statute, or treatise that supports the standard of care attested to by Mann.
"[I]f there is any question as to the credibility of affiants in a summary judgment motion or if there is a question which can be resolved only by the weight of the evidence, summary judgment should be denied." Thomasville v. Lease-Afex, Inc., 300 N.C. 651, 655, 268 S.E.2d 190, 193-94 (1980).
Here, the parties offered two wholly different standards of care through their expert witnesses. Thus, there was a genuine issue of material fact as to the standard of care applicable in this case which the trial court was not authorized to decide. Vassey, 301 N.C. at 72, 269 S.E.2d at 140.
Raiford asserts, however, that even if she was negligent, SECU's contributory negligence bars its recovery. SECU has offered no argument in opposition to this contention.
"A plaintiff is contributorily negligent when he fails to exercise such care as an ordinarily prudent person would exercise under the circumstances in order to avoid injury." Newton v. New Hanover Cty. Bd. of Educ., 342 N.C. 554, 564, 467 S.E.2d 58, 65 (1996). The burden of proving contributory negligence is on the defendant. Martishius v. Carolco Studios, Inc., 355 N.C. 465, 479, 562 S.E.2d 887, 896 (2002). "The existence of contributory negligence is ordinarily a question for the jury; such an issue is rarely appropriate for summary judgment, and only where the evidence establishes a plaintiff's negligence so clearly that no other reasonable conclusion may be reached." Id. "[L]ike any standard requiring a determination of `reasonableness,' the existence of contributory negligence depends upon the particular facts of each case." Smith v. Fiber Controls Corp., 300 N.C. 669, 677, 268 S.E.2d 504, 509 (1980).
In this case, SECU is a state-charted credit union engaged in business throughout North Carolina. Philip Edmund Greer, SECU's Senior Vice President of Loan Administration responsible for the oversight, servicing, and collection of all loans, has "overseen the origination of approximately 150,000 residential mortgage loans made by SECU." Mr. Greer explained that "[t]he function of a loan officer at SECU is to . . . determin[e] whether a Member can repay a particular loan and assur[e] that SECU is protected in the event the Member cannot repay the loan." Mr. Greer further stated that "[a]n SECU loan officer is in a position to use his or her background and experience to determine . . . if SECU has adequate security in the event the Member cannot repay the loan."
SECU contacted Raiford on 5 August 2004, the day the Hendryxs closed on their purchases of 1102 and 1104 Gearwood Avenue, and requested copies of the recorded deeds. On 6 August 2004, Raiford recorded the deeds and faxed copies of the recorded deeds to SECU. The deeds had North Carolina Revenue Stamps affixed, indicating the purchase prices of the properties.[5] On 12 August 2004, SECU sent Raiford closing packages for the refinance loans with the loan amounts already determined.
SECU contacted Raiford again on 17 August 2004, the day the Hendryxs closed on their purchases of 606 Gray Avenue, 702 Gray Avenue, and 1313 Calvin Street, and requested copies of the recorded deeds. On 17 August 2004, Raiford recorded the deeds and faxed copies of the recorded deeds to SECU. The deeds had North Carolina Revenue Stamps affixed, indicating the purchase prices of the properties.[6] On 26 August 2004, SECU sent Raiford closing packages for the refinance loans with the loan amounts already determined.
Mr. Greer states the following in his affidavit:
Defendant Raiford knew that the total purchase price of the [five] properties was $158,000[] and the loans from SECU that were secured by the five properties amounted to $357,800[]. At a minimum, Defendant Raiford should have questioned the discrepancies between the purchase prices and loan amounts for the properties.
However, it is uncontested that SECU also knew that the total purchase price of the five properties was $158,000, whereas the loans from SECU that secured the five properties amounted to $357,800. Thus, as a sophisticated and experienced provider of residential mortgage loans throughout the state, SECU should have questioned the discrepancies between the purchase prices and the loan amounts it agreed to extend for the properties prior to approving the loans.
Furthermore, Michael Howard, the certified appraiser chosen by SECU, provided SECU with appraisals for all the properties which "grossly overstated the value of each of the . . . [p]roperties." Mr. Greer stated in his affidavit that "[l]ending institutions . . . consider an appraisal performed by a licensed or certified real estate appraiser the `gold standard' in determining the value of the property." In SECU's civil action against Mr. Howard in this case, the trial court found as fact that SECU's loan officers relied on Howard's appraisals to determine the market values of the properties in connection with the loans made to the Hendryxs and that such loans would not have been made had Howard not given to SECU the inaccurate certified appraisals on the properties.
Thus, unlike Raiford, SECU had in its possession the appraisals of the properties, made within days of the original purchases, which valued each of the properties at approximately three times their original purchase prices. Accordingly, SECU should have questioned the discrepancies between the appraisals and the original purchase prices prior to approving the loans.
While SECU alleges that Raiford was negligent in (1) not inquiring of the borrower as to the discrepancies in values between the original purchase prices and the refinance amounts; (2) assuming no valid reason was given by the borrower, in closing the refinance loans; and (3) failing to withdraw from representing both parties because of the conflict of interest between them, the undisputed evidence establishes SECU's negligence so clearly that no other reasonable conclusion may be reached. Martishius, 355 N.C. at 479, 562 S.E.2d at 896. We thus conclude that Raiford carried her burden of proving as a matter of law that SECU was contributorily negligent, proximately causing its injuries in this case. Accordingly, the trial court properly granted Raiford's motion for summary judgment on SECU's negligence claim.

B. Fraud
"[T]he essential elements of actionable fraud are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party." Harrold v. Dowd, 149 N.C. App. 777, 782, 561 S.E.2d 914, 918 (2002). "Allegations of fraud are subject to more exacting pleading requirements than are generally demanded by our liberal rules of notice pleading." Id. (citation and quotation marks omitted). Rule 9(b) of the North Carolina Rules of Civil Procedure provides in relevant part: "In all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." N.C. Gen. Stat. § 1A-1, Rule 9(b) (2007). "[I]n pleading actual fraud the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." Terry v. Terry, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981) "This formula ensures that the requisite elements of fraud will be pleaded with the specificity required by Rule 9(b)." Harrold, 149 N.C. App. at 782, 561 S.E.2d at 918.
In its complaint, SECU's sole allegation regarding Raiford's alleged false representations or concealment of material facts is as follows: "[Raiford] made false representations and/or concealed material facts regarding the fair market value of real property in connection with loans from SECU to the Hendryx Defendants." This allegation fails to state any facts which, if true, would have constituted such a representation or concealment. SECU's bare-bones allegation is thus insufficient to meet the particularity requirement set forth in Rule 9(b) and explained in Terry. Summary judgment on SECU's fraud claim against Raiford was, therefore, proper. Trull v. Central Carolina Bank & Trust Co., 117 N.C. App. 220, 224, 450 S.E.2d 542, 545 (1994), disc. review denied, 339 N.C. 621, 454 S.E.2d 267 (1995).
AFFIRMED.
Judges HUNTER, JR. and BEASLEY concur.
Report per Rule 30(e).
NOTES
[1] Although the record is silent as to the outcome of the action against Defendants Julian R. and Linda M. Hendryx (collectively, the "Hendryxs"), the 16 December 2008 judgment finds that "the only parties remaining in this matter are the plaintiff, State Employees' Credit Union, and the defendant, Michael A. Howard." The Hendryxs are not parties to this appeal.
[2] The record indicates that Howard appealed the judgment against him, but that his appeal was stayed "until the resolution of the coverage matter pending in the United States District Court for the Eastern District of North Carolina . . . or until July 1, 2009, whichever is sooner." Howard is not a party to this appeal.
[3] The record does not disclose Shannon's last name.
[4] "An excise tax is levied on each instrument by which any interest in real property is conveyed to another person. The tax rate is one dollar ($1[]) on each five hundred dollars ($500[]) or fractional part thereof of the consideration or value of the interest conveyed." N.C. Gen. Stat. § 105-228.30(a) (2007).
[5] See N.C. Gen. Stat. § 105-228.30(a).
[6] See N.C. Gen. Stat. § 105-228.30(a).